[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
NOTICE. [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.
 MEMORANDUM OF DECISION ON DEFENDANT CROWN HIGH CORPORATION'S MOTION FOR SUMMARY JUDGMENT
The plaintiffs, Martin and Marguerite Meshako ("plaintiffs"), have filed CT Page 6947-A a seven-count complaint against the defendants, John Thompson, Ricky Ferraro, Bennie Gonzalez and Crown High Corporation ("Crown High"). The plaintiffs allege that they each received personal injuries on August 5, 1991 when a vehicle operated by the plaintiff Martin Meshako was run into by a vehicle being operated in a negligent and reckless manner by Thompson. Although it is not alleged in the complaint, the court will assume that the plaintiff Marguerite Meshako was a passenger in the vehicle being operated by her husband Martin. The plaintiffs claim that Thompson was acting as the agent or subagent of Ferraro and Gonzalez within the scope of his authority, and that Crown High was the owner-lessor of the vehicle being operated by Thompson.
The first, third, fourth, sixth and seventh counts are directed at Crown High. The first and [*2] fourth counts seek damages for personal injuries allegedly suffered by each plaintiff, the third and sixth counts claim loss of consortium by each plaintiff, and the seventh count seeks double or treble damages based on Thompson's alleged reckless disregard of various statutes in his operation of Crown High's vehicle. The liability of Crown High on all five counts is based on its ownership of a leased vehicle pursuant to General Statutes 14-154a.
Crown High's answer to the complaint admits ownership of the vehicle CT Page 6947-B involved in the collision, denies or pleads no knowledge as to all other allegations, and, in addition, Crown High has pleaded three special defenses. The second special defense was stricken by earlier action of this court, Zoarski, J., leaving the first and third special defenses as part of the pleadings. The first special defense alleges that at the time of the accident Crown High's vehicle "was being used without permission or authorization" by Crown High. The third special defense alleges that at the time of the accident Crown High's vehicle "was being operated as a stolen motor vehicle." Both special defenses have been denied by the plaintiffs.
Before the court at [*3] this time is Crown High's motion for summary judgment claiming that there is no genuine issue of material fact with respect to either of its special defenses, and that Crown High is entitled to judgment as a matter of law on either one or both of the special defenses.
A summary judgment is granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book 384. The trial court "must view the evidence in the light CT Page 6947-C most favorable to the nonmoving party." Connell v. Colwell, 214 Conn. 242,247, 571 A.2d 116 (1990). The function of the trial court is to determine whether an issue exists, not to try it if it does. Forgarty v. Rashaw,193 Conn. 442, 444, 476 A.2d 582 (1984). A party's motion for summary judgment is "properly granted if it raises at least one legally sufficient defense that would bar the [opposing party's] claim and involves no triable issue of fact." Perille v. Raybestos-Manhattan-Europe, Inc., 196 Conn. 529,543, 494 A.2d 555 (1985). [*4]
Crown High claims to have shown that there is no genuine issue of material fact with respect to those facts necessary to entitle it to summary judgment on the first special defense. These facts, which have been established by the documentary evidence filed by Crown High, are that Crown High rented the vehicle involved in the accident to Ferraro on August 2, 1989; that the rental agreement between Crown High and Ferraro provided that only Ferraro, his spouse, his employer or a regular fellow employee could operate the vehicle; that Thompson, the operator of the vehicle, was not the spouse, employer or fellow employee of Ferraro; that the rental agreement also provided that an additional driver could operate the vehicle if he or she appears at the time of rental and signs the additional driver form; that no additional driver so appeared or was authorized by the rental CT Page 6947-D agreement to operate the vehicle; that Ferraro was the only person authorized by the rental agreement to operate the vehicle; that Ferraro did not disclose to Crown High that he was renting the vehicle at the request of and for the use of Gonzalez; that Ferraro turned the vehicle over to Gonzalez immediately after receiving [*5] possession of it from Crown High; and at the time of the accident the vehicle was being operated by Thompson. While the plaintiffs do not dispute the foregoing facts, they do claim that these facts do not entitle Crown High to judgment as a matter of law on the first special defense.
With respect to the third special defense, in addition to the facts set forth above, Crown High claims that it has shown that there is no genuine issue of material fact as to its claim that at the time of the accident the vehicle was being operated as a stolen motor vehicle. The plaintiffs dispute the adequacy of the documentary evidence filed by Crown High in an effort to establish that the vehicle was being operated as a stolen motor vehicle.
Practice Book 381 proscribes the form of affidavits filed in connection with a motion for summary judgment. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would CT Page 6947-E be admissible as evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Practice Book 381. Orenstein v. Old Buckingham Corporation, 205 Conn. 572, 574, 534 A.2d 1172
(1987). [*6]
To establish that the vehicle had been stolen by Thompson at the time of the accident, Crown High offers the sworn statement of Ferraro given to the police. In his statement Ferraro describes his rental of the vehicle at Gonzalez's request, turning the vehicle over to Gonzalez, his efforts to get the vehicle back from Gonzalez, and that Gonzalez told him that Thompson took the vehicle while he, Gonzalez, was sleeping. It is this taking which is claimed to show that Thompson stole the vehicle. This is a hearsay statement by Ferraro, he would not be able to testify as to Gonzalez' statement to him, and therefore it is not admissible in support of a motion for summary judgment. Sheridan v. Board of Education,20 Conn. App. 231, 240 (1989). Nor does this portion of Ferraro's sworn testimony become admissible because it is part of a police report. See Hutchinson v. Plante, 175 Conn. 1, 5 (1978); Sheary v. Hallock's of Middletown, Inc., 149 Conn. 188, 197 (1962). In the opinion of the court, Crown High has failed to show that there is no genuine issue of material fact with respect to its claim that [*7] the vehicle had been stolen at the CT Page 6947-F time of the accident, as alleged in the third special defense.
It is the plaintiffs' claim that the liability of Crown High on all five counts directed at it for the damages sustained in this case comes about by virtue of the provisions of General Statutes 14-154a which provides:
Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such to the same extent as the operator would have been liable if he had also been the owner.
Therefore, the issue raised by Crown High's motion for summary judgment on the first special defense is whether, based on the facts set forth above, the owner of the vehicle in question, Crown High, is liable for the accident and damages claimed to the same extent as the operator, Thompson, would be if he were also the owner.
The Connecticut Supreme Court, in a case where the defendant-lessor claimed the statute was unconstitutional, interpreted the statute, which remains unchanged, in the following language:
While the statute is very likely capable of a broader construction, we have CT Page 6947-G indicated in these two decisions [*8] what we deem to be the true intent of the legislature, to impose upon the person who lets an automobile for hire a liability for the tortious acts of him who hires it or of anyone who comes into possession of it under the contract of hiring with the express or implied authority of the owner. We cannot impute to the legislature an intent, so unreasonable and of such doubtful constitutionality, to include a liability of the owner for the tortious acts of one who wrongfully acquires possession of the car from him into whose hands it came by the voluntary act of or under authority from the owner. . . .
Connelly v. Deconinck, 113 Conn. 237, 240 (1931).
The language in Connelly that, in order to impose liability on the owner-lessor for the acts of the operator, the vehicle must be operated at the time in question by "one in lawful possession of it pursuant to the terms of the rental contract" has been incorporated in several later decisions of the Supreme Court.
This statute has been construed as imposing on one who rents or leases a motor vehicle to another the same liability as that of its operator, CT Page 6947-H provided the vehicle, at the [*9] time in question, is being operated by one in lawful possession of its pursuant to the terms of the contract of rental. Levy v. Daniels' U-Drive Auto Renting Co., 108 Conn. 333, 336,143 A. 163; Connelly v. Deconinck, 113 Conn. 237, 240,155 A. 231; Farm Bureau Mutual Automobile Ins. Co. v. Kohn Bros. Tobacco Co., 141 Conn. 539, 542, 107 A.2d 406. As pointed out in the cases cited, the statutory liability is imposed, ex contractu, by making a necessary term of every contract for the rental of a motor vehicle. "The statute gives, in terms, the injured person a right of action against the defendant which rented the automobile. . . . It was a right which the statute gave directly, not derivatively, to the injured person as a consequence of the contract of hiring." Levy v. Daniels' U-Drive Auto Renting Co., supra.
Graham v. Wilkins, 145 Conn. 34, 37 (1958).
That the court considered as a relevant factual issue whether the operator of the vehicle was an [*10] authorized operator under the terms of the rental contract in order for the owner to be liable for the acts of that operator is quite clear in Graham. A question was raised in that case by the defendant-lessor as to whether the operator had been authorized to operate the vehicle by the lessor and the court held: CT Page 6947-I
Since a corporation can act only through the instrumentality of human beings, the defendant, in renting to the company, necessarily authorized the company to engage some person to operate the truck. A special defense that the plaintiff was the person so engaged and had without authority permitted Erickson to operate the truck was abandoned, and the defendant took no exception to the court's assumption in its charge that Erickson, and not the plaintiff, was the agent of the company in operation of the truck. Therefore the operation of the truck by Erikson was in law the operation of the truck by the company as the corporate lessee. As already pointed out, the basic objective of the automobile rental statute is to make the owner as liable as the operator for damages caused by the operation of a car by one in lawful possession of it pursuant to the terms of a rental contract. [*11] The statute must be construed in harmony with this basic objective.
Graham v. Wilkins, supra, 41.
The plaintiffs have pointed to the case of Fisher v. Hodge, 162 Conn. 363, in support of their claim that Crown High is liable under the statute for the negligent operation by Thompson under the facts of the instant CT Page 6947-J case.
The issue in Fisher, upon which that case was decided, was whether the operator of the vehicle was a member of the lessee's "immediate family" and thus an authorized operator under the terms of the rental contract. The court held that the operator, who was the brother of the lessee, was included in the lessee's "immediate family", and that he came within the terms of the rental agreement.
The Fisher court then went on, in obvious dicta, as follows: "we find merit to the . . . claim of the plaintiff that the defendant Hertz Corporation is liable under the provisions of 14-154a of the General Statutes regardless of the provisions of the rental contract restricting the use of the automobile to specified individuals." Id., supra, 368-69. Furthermore, the court explained that there [*12] was "no claim that [the defendant driver] acquired possession of the car from [the lessee] by theft, fraud or duress." Id., supra, 370. As a result, the court held that, "even if [the defendant driver] was not a member of the immediate family of the lessee, . . . on the evidence the jury could reasonably and logically find that the defendant Hertz Corporation was liable for the damages caused by his operation of the rental vehicle." Id., supra, 371. CT Page 6947-K
A more recent Supreme Court case on the issue is Gionfriddo v. Avis Rent A Car System, Inc., 192 Conn. 280 (1984). In Gionfriddo the court held that:
[It] cannot be regarded otherwise than as an expression of legislative judgment as to the extent — beyond the limitations of the general principles of respondeat superior and the "family-car doctrine" — to which the owner of a motor vehicle which he entrusts to another should be liable for the acts of the latter.
(Citations omitted). Id., supra, 284. However, the Gionfriddo court, departing from the dicta of the Fisher case, also found that:
We have consistently construed the statute "as imposing on one who rents or leases a motor [*13] vehicle to another the same liability as that of its operator, provided the vehicle, at the time in question, is being operated by one in lawful possession of it pursuant to the terms of the contract of rental. (Emphasis added.) Levy v. Daniels' U-Drive Auto Renting Co.,108 Conn. 333, 336, 143 A. 163 (1928); Connelly v. Deconinck, 113 Conn. 237,245, 155 A. 231 (1931); Farm Bureau Mutual Auto. Ins. Co. v. Kohn Bros. Tobacco Co., 141 Conn. 539, 542, 107 A.2d 406 (1954); Graham v. Wilkins, CT Page 6947-L145 Conn. 34, 37, 138 A.2d 705 (1958)."
Two appellate court cases, addressing the scope of 14-154a, have been decided after the Gionfriddo opinion. In Hughes v. National Car Rental Systems Inc., 22 Conn. App. 586 (1990), the court, construing 14-154a
broadly, held that "[a] lessor of a motor vehicle has been held liable for injuries caused by the operation of the vehicle by the brother of the lessee, even if the lease agreement expressly excluded such liability." Hughes v. National Car Rental Systems Inc., supra, 589, [*14] discussing Fisher v. Hodge, supra, 363. It should be noted that the issue in Hughes was whether an allegation that the driver of a car had fired a gun causing injuries to a passenger in another car was a sufficient allegation that the operation of the car had caused the injuries. Therefore, the only issue in Hughes was the interpretation of the word "operation" as used in the statute.
On the other hand, the appellate court in Wallenta v. Avis Rent A Car Systems Inc., 10 Conn. App. 201 (1987), citing Gionfriddo, stated that:
General Statutes 14-154a is a statute which grants a cause of action to those persons claiming damage because of the operation of a car which is CT Page 6947-M lawfully in the possession of an operator of a car pursuant to the terms of a contract of rental of that car, against the lessor.
(Emphasis added.) Id., supra, 205.
As indicated above, the court in Hughes stated that in Fisher, the lessor was held liable for the injuries caused by the brother of the lessee even though the lease agreement excluded such liability. Hughes v. National Car Rental Systems Inc., supra. [*15] This statement is incorrect. What the Fisher court actually held was that "in the context of an automobile rental contract, the phrase [immediate family] may take on a variety of meanings, [and] when a contract is subject to a number of interpretations, its language must be construed against the party who drew it." Fisher, supra, 368. Accordingly the Fisher court held that "the [trial] court could reasonably and logically conclude that in the . . . rental agreement there was no contract prohibition against the use of the leased car by the [defendant driver] with the permission of the lessor." Id. Therefore the court found that the rental agreement had not been breached and only attempted to extend the reach of 14-154a in the dicta of the case.
In the case at bar, Thompson, the driver, is clearly not an authorized CT Page 6947-N driver of the rental car under the terms of the rental agreement entered into between Crown High and the lessee, Ferraro. Whether Crown High should be held liable for the acts of a person so far removed from the rental agreement depends on whether this court follows the reasoning of such cases as Connelly, Graham and Gionfriddo, [*16] or the dicta of Fisher.
The Connelly case is supported by a plethora of later cases, discussed above. The Fisher case was an attempt, by way of dicta, to extend the reach of 14-154a, however this extension has never been put into effect. Instead, in its most recent opinion, Gionfriddo, the Supreme Court returned to its previous position, that a defendant car-rental lessor cannot be held liable for accidents caused by persons outside the scope of the rental contract. This court chooses to follow the reasoning of Connelly and the cases cited which have adopted that reasoning.
There being no genuine issue of material fact with respect to the claim of the defendant Crown High as alleged in the first special defense, that the driver, Thompson, was an unauthorized driver under the terms of the rental contract, the court finds as a matter of law that Crown High is not liable under the provisions of 14-154a, and summary judgment in favor of Crown High may enter on the first special defense. CT Page 6947-O
Hadden, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 6955