[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ARTICULATION OF DECISION RE:
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION CT Page 10781 OVER FOREIGN CORPORATION AND FOR IMPROPER VENUE
Plaintiff Miami Rivet Company made an Application for Prejudgment Remedy to the Superior Court for the Judicial District of Ansonia/Milford at Milford. Defendant Hardware Designers Inc. requested the Court to dismiss the Plaintiff's Application for Prejudgment Remedy alleging that "[t]he assertion of personal jurisdiction over the [D]efendant violates its constitutional due process rights," and in the alternative, "[a]ssuming Connecticut may exercise jurisdiction over the [D]efendant with respect to the [p]laintiff's claim, the application must be brought to the same court which would have proper venue of the Plaintiff's cause of action." The Plaintiff submitted a Memorandum of Law in Opposition to the Defendant's Motion to Dismiss. Following a hearing on this Motion, the Plaintiff and the Defendant filed supplemental memoranda.
Plaintiff Miami Rivet Company is a Delaware corporation. The Plaintiff asserts that it maintains an office and place of business in Shelton, Connecticut. The Plaintiff claims that it no longer maintains an office or operates a business in Florida, nor does it have an office or place of business in New York or Pennsylvania. The Defendant maintains that the Plaintiff ceased doing business in early 1991 and at hearing on this motion, the Defendant corporations' President, Mr. Brian Fielding, testified that the Plaintiff went out of business suddenly in 1991. The Defendant alleges that the Plaintiff has no employees; no assets, other than two receivables, one of which is the subject of this suit; does not have a telephone in its name; and uses the office of its corporate parent in Shelton, Connecticut.
Defendant Hardware Designers, Inc. is a New York corporation. The Defendant alleges the following in its post-Hearing Memorandum of Law on its Motion to Dismiss: The Defendant corporation began its operations in New York in 1961 and in 1984 moved its manufacturing operations and other offices to Waterbury, Connecticut. The Waterbury operations were closed in 1989 and all manufacturing facilities and virtually all of its offices were moved to Marienville, Pennsylvania. This Pennsylvania manufacturing facility of about 70,000 square feet employs about 100 people. Subsequently the Defendant opened a small office in Danbury, Connecticut, which was in use in 1991. This Danbury sales office is now used by its president, sales manager, a secretary and CT Page 10782 a customer service representative. The Defendant's purchasing and accounting functions including accounts payable and receivable, all take place in Pennsylvania and have since its move from Connecticut in 1989. Less than 1% of the Defendant's sales are made to Connecticut purchasers.
Defendant Hardware Designers, Inc. alleges that in 1990 its certificate of authority to transact business in Connecticut was revoked. At a hearing on this Motion to Dismiss, Brian Fielding, the Defendant's President, testified that the authority of the corporation to do business in the State of Connecticut lapsed or was revoked sometime in 1990. Mr. Fielding also testified that the Defendant's entire sales department and sales staff is located at the Danbury office.
Plaintiff Miami Rivet Company asserts that in 1991 the Defendant Hardware Designers placed orders for rivets with the Plaintiff's Hialeah, Florida manufacturing plant in Hialeah, Florida and that the Plaintiff shipped the goods to the Defendant's facility in Marienville, Pennsylvania. The Defendant alleges that this order was requested in 1991 pursuant to a purchase order from the Defendant's Pennsylvania plant. The Plaintiff claims that the Defendant has failed to pay for these rivets totalling $23,094.08, despite repeated demands for payment.
The Defendant alleges the following in its Post-Hearing Memorandum of Law on its Motion to dismiss: When the Defendant received notice that the Plaintiff was closing, the Defendant asked the Plaintiff to send them whatever supply they had. The Defendant was able to use some of the shipment, but many of the rivets were defective. The Plaintiff also failed to ship a large order for rivets which the Plaintiff had accepted. This failure to fill the order "shut down" the Defendant, causing it substantial damages, which the Defendant claims exceed whatever amount may be due the Plaintiff on the rivets received. The Defendant has sent to the Plaintiff in Florida a debit memo claiming damages and receiving no response, intends to pursue its claim by counterclaim or setoff in a court of proper jurisdiction.
I. Personal Jurisdiction
A. Connecticut Statutes
According to Connecticut General Statutes section 33-396, "no foreign corporation . . . shall transact business in this state until CT Page 10783 it has procured a certificate of authority to do so from the secretary of the state." Conn. Gen. Stat. 33-396 (1993).[1] "A foreign corporation shall not be considered to be transacting business in this state solely because it carries on in this state one or more of the enumerated activities [of 33-397 (b)]. This does not exclude a finding that a foreign corporation transacts business in this state of its other activities lead to that conclusion." Conn. Tool Mfg. Co. v. Bowsteel Distributors, Inc., 24 Conn. Sup. 290,296, 190 A.2d 236, 239-40 (1963). The Defendant corporation is not protected by the interstate commerce exception in sec. 33-397(b)(8), because although the Defendant engages in interstate commerce, the Defendant also makes sales to customers within Connecticut. These sales also do not fall under the 397(b)(9) exception for isolated transactions, because 1% of the Defendant's sales are made in Connecticut and therefore do constitute isolated transactions. The Court finds, therefore, that the Defendant transacts business within the State, in contravention of Connecticut General Statutes Section 33-396.
Connecticut General Statutes section 33-411(a) makes a foreign corporation amenable to service of process when it has obtained authorization from the secretary of state to transact business in the state. In Wallenta v. Avis Rent-a-Car System, 10 Conn. App. 201,522 A.2d 820 (1987), the Court held that where a foreign corporation complied with the requisites of 33-411(a), it had consented to the exercise of jurisdiction by the courts of this state, whether or not the cause of action arose out of activities which occurred in another state and were unconnected to the activities which occurred in another state and were unconnected to the activities of the corporation in Connecticut. Wallenta, supra, at 207-08, 522 A.2d at 824.
In the present case, however, the Defendant's authority lapsed or was revoked in 1990. The purchase of rivets in 1991, which is the subject matter of this case, took place after the Defendant's authorization had ceased to exist. According to the Defendant, all purchasing and accounts payable/receivable activities took place Pennsylvania and the purchase order for the subject transaction was submitted from the Defendant's Pennsylvania plant.
Under Connecticut General Statutes Section 33-411 (b) "[e]very foreign corporation which transacts business in this state in violation of section . . . 33-396 shall be subject to suit in this state upon any cause of action arising out of such business."[2]
The court in Wallenta found that "General Statutes section 33-411 CT Page 10784 (b), in effect, puts a Defendant in the same position it would have been in, had it . . . appointed an agent for service of process because it was conducting business in this state." Wallenta, supra, at 206, 522 A.2d at 823. However, the Wallenta court also noted that "General Statutes 33-411 (b) has been interpreted as requiring, for the purposes of withstanding a motion to dismiss for lack of jurisdiction over a nonresident corporation, allegations in the complaint that the Plaintiff's cause of action arose out of the Defendant's transaction of business in the state." Wallenta, supra, at 205, 522 A.2d at 823.
Section 33-411 (b), therefore, restricts consideration to those activities out of which the cause of action arose. See Electric Regulator Corp. v. Sterling Extruder Corp., 280 F. Sup. 550, 554
(D. Conn. 1968). Also, "decisions addressing 33-411 (b) have consistently held that the statutory language mandating `any cause of action arising out of the transaction of such business' requires some showing that the present litigation bears some connection with the business conducted by the foreign corporation in this state." Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245,252, 460 A.2d 481, 484 (1983) (citing Apolinario v. Avco Corp.,561 F. Sup. 608, 611-13) (D. Conn. 1982).
"In determining whether the Plaintiff's cause of action arose from the Defendant's transaction of business within this state [the Court] does not resort to a rigid formula. Rather [the Court] balances considerations of public policy, common sense, and the chronology and geography of the relevant factors." Hill v. W.R. Grace Co., 42 Conn. Sup. 25, 32, 598 A.2d 1107, 1111 (1991).
In Guthrie v. Ciba-Geigy, 620 F. Sup. 91 (D. Conn. 1984), the Federal District Court of Connecticut held that it lacked personal jurisdiction under 33-411 (b) over the Defendant corporation which was not licensed to do business in Connecticut, yet transacted business here. The Guthrie plaintiff failed to make a showing of the necessary relationship between his cause of action and the business allegedly transacted by the defendant in Connecticut. The Court rejected the Plaintiff's argument that the Defendant's extensive business contacts with the State of Connecticut, in and of themselves, provide the necessary nexus to confer personal jurisdiction. The Plaintiff's employment discrimination action involved decisions made by the corporation at its headquarters in New York and did not arise from any business conducted by the corporation in Connecticut. Guthrie, supra, at 92. Like the facts in Guthrie, the plaintiff's Application for Pre-Judgment Remedy and CT Page 10785 attendant debt action involves purchases made by the Defendant at its Pennsylvania plant and did not arise from any business conducted by the Defendant in Connecticut.
In contrast to Guthrie, Judge Dupont in the case of The Richardson Co. v. Rotuba Extruders, Inc., 36 Conn. Sup. 262,417 A.2d 944 (1980) held that the Superior Court had personal jurisdiction over a New York corporation in an action brought by an Ohio corporation seeking payment for goods sold to the New York corporation. The requisite causal connection was found because the Defendant not only did business in Connecticut, but the Plaintiff had ordered the subject goods from the Defendant's office in Connecticut. Richardson, supra. Unlike the facts in Richardson, the Defendant in the present case submitted a purchase order from its Pennsylvania plant to the Plaintiff's Florida manufacturing plant and, consequently, this transaction did not involve any contact with the Defendant's sales office in Danbury.
Judge Licari in Hill v. W. R. Grace Co., 42 Conn. Sup. 25
(1991) held that the Superior Court had personal jurisdiction over a foreign corporation even when the subject transaction took place outside of the state. The Hill court held that it had personal jurisdiction over an Illinois corporation, which but for a seven-month period had never conducted and never was authorized to do business in Connecticut. The requisite causal connection was found in part because the Plaintiff's products liability claim arose from the Plaintiff's exposure to asbestos while working in Connecticut on the Defendant's machine which was sold and delivered to Connecticut, although the contract for the sale of the machine took place in Pennsylvania. Hill, supra, at 32, 598 A.2d at 1111. Unlike the facts in Hill, the rivets purchased through the Defendant's Pennsylvania plant were for use in Pennsylvania, Connecticut.
B. Constitutional Due Process
Constitutional due process limitations provide further evidence of a lack of causal connection between the Defendant's purchase of rivets, and the Defendant's sales of drawer slides in Connecticut. The obligation which was sued upon in International Shoe v. Washington Co., 326 U.S. 310 (1945), to pay unemployment compensation taxes, arose from the activities of the Defendant corporation's salesmen in the forum state. According to International Shoe, "[t]he assertion of jurisdiction must not offend traditional notions of fair play and substantial justice." CT Page 10786 International Shoe, supra, at 316, citing Miliken v, Meyer,311 U.S. 457, 463. Unlike the International Shoe obligation, the Defendant Hardware Designers could not have anticipated being hauled into court in Connecticut, to defend an alleged failure to pay for rivets which its Pennsylvania plant ordered from a Florida supplier and which were shipped to its Pennsylvania plant for the manufacture of drawer slides at the Pennsylvania plant.
"The relationship between the Defendant and the forum must be such that it is `reasonable . . . to require the corporation to defend the particular suit which is brought there.'" World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). In the interest of fairness, it would be unreasonable to require the Defendant to bring in witnesses and evidence from Pennsylvania, where not only the subject transaction took place, but also where all of the corporation's purchasing and accounting functions occur.
II. Quasi in Rem Jurisdiction
The present case also involves an issue of quasi in rem jurisdiction because the Plaintiff has made Application for Pre-Judgment Remedy seeking attachment of Defendant's property in satisfaction of the Defendant's alleged debt, including property located in Danbury, Connecticut. (Application for Pre-Judgment Remedy at 2); see Pennington v. Fourth National Bank, 243 U.S. 269,271-72 (1917). Until Schaeffer v. Heitner, 433 U.S. 186 (1977), "it was well established that the presence of property in a state gave the courts of that state, jurisdiction to adjudicate rights to the property without regard to the relationship of the underlying dispute and the property owner to the forum." Louring v. Kuwait Boulder Shipping Co., 455 F. Sup. 630 632-33 (D. Conn. 1977) The U.S. Supreme Court has ruled in Schaeffer that "all assertions of state-court jurisdiction, [including in rem and quasi in rem], must be evaluated according to the standards set forth in International Shoe and its progeny," Schaeffer, supra at 212, and therefore must be subject to constitutional due process limitations.
As in the case at bar, Louring involved an action to recover on a debt, attended by an application for pre-judgment remedy under Connecticut General Statutes section 52-278e. Unlike the present case, however, the Louring defendant was not only a corporation foreign to the state, but also foreign to the United States, and therefore, no other forum was available to the plaintiff. The Schaeffer court left open the question of whether the presence of a defendant's property in a state is a sufficient basis for CT Page 10787 jurisdiction "when no other forum is available to the plaintiff." Louring, supra, at 633 (quoting Schaeffer, supra, at 211, n. 37). Because no other forum was available and the defendant made no claim that it could be subjected to jurisdiction in some state other than Connecticut, the Louring court denied the defendant's motion to dismiss. Louring, supra, at 633. The Louring court also noted in dicta that "[e]ven if the defendant could be more substantially "found" in another state, there is no unfairness in calling upon a foreign corporation to defend in Connecticut to the extent of a debt accruing in Connecticut." Id. However, unlike the debt owing in Louring, the debt which is the subject matter of this Application for Pre-Judgment Remedy did not accrue in Connecticut, and therefore, the Court cannot look to the Louring court's dicta for guidance.
In the present case, however, Connecticut is not the only forum available to the Plaintiff because the Defendant is not a corporation foreign to this country. "The Schaeffer court was persuaded to apply the standards of International Shoe to quasi in rem jurisdiction in part because an in personam jurisdiction could be obtained `in a forum where the litigation could be maintained consistently with International Shoe,' and because the state in which the property is located would then be obliged to honor such a judgment under the full faith and credit clause." Louring, supra, at 633 (citing Schaeffer, supra, at 210).
III. Venue
Even if the Defendant were amenable to personal jurisdiction or quasi in rem jurisdiction within the State of Connecticut the Judicial District of Ansonia/Milford is not the proper venue. Under Connecticut General Statutes section 52-278 (c)(1), an Application for Pre-Judgment Remedy must be directed to the superior court to which the action was made returnable. "In all actions by a corporation, except actions returnable under subsection (c) [actions involving land] of this section, civil process shall be made returnable: If the plaintiff is a foreign corporation and the defendant is a corporation, domestic or foreign, to the judicial district where (A) the injury occurred, (B) the transaction occurred, or (C) the property is located or lawfully attached." Conn. Gen Stat. 51-345 (c) (1993) (emphasis added). Because the property to be attached under the Application for Pre-Judgment Remedy is located in Danbury, Connecticut, the proper Judicial District would be the Judicial District of Danbury. CT Page 10788
The Plaintiff has asserted that section 51-345(c) does not apply but that section 51-345(a) applies and, therefore service is returnable, "to the judicial district where either the Plaintiff or the Defendant resides." However, section 51-345 (c) applies to all actions by corporations, except those involving land. "Because attachment liens have no common law counterparts, statute permitting them have always been strictly construed." Union Trust Co. v. Heggelund, 219 Conn. 620, 626, 594 A.2d 464, 467 (1991) Therefore, section 51-345(a) applies to the case at bar, not section 51-345(c).
If the Court had found the Defendant amenable to personal jurisdiction, the Plaintiff could have corrected the improper venue by filing a motion to transfer. Clearly, "venue is distinct from jurisdiction. Venue may be proper or improper, independent of questions of subject matter or personal jurisdiction." Guthrie, supra, at 92 (quoting Driscoll v. New Orleans Steamboat Co.,633 F.2d 1158, 1159, n. 1) (5th Cir. 1981).
Inasmuch as Defendant Hardware Designers, Inc. is not subject to personal jurisdiction under Connecticut General Statutes section 33-411(b) and the assertion of in personam or quasi in rem jurisdiction would offend constitutional due process limitations, the Court hereby grants the Motion to Dismiss.
Clarance J. Jones, Judge
This court acknowledges the research assistance provided by Ms. Lisa Arpaia, Law Clerk, relative to the preparation of this Memorandum of Decision.